**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

**CASE NO. 21-82235-CIV-CANNON**

THE CORING COMPANY, on behalf of itself
and all others similarly situated

                          Plaintiffs,

    v.

APPLE INC.

                        Defendant.

**DEFENDANT APPLE INC.'S MOTION TO TRANSFER
VENUE AND MEMORANDUM OF LAW IN SUPPORT**

Defendant Apple Inc. respectfully moves to transfer this case to the United States District
Court for the Northern District of California under 28 U.S.C. § 1404(a), the first-filed rule, and 28
U.S.C. § 1406(a).

## I. INTRODUCTION

This case is the latest in a series of complaints filed against Apple Inc. by serial-litigant
Jeffrey Isaacs and entities with which he is associated. Starting in January 2021, Mr. Isaacs or his
proxies filed three near-identical lawsuits (comprising seven complaints) in New Hampshire,
Maine, and California. Following amendments, voluntary dismissals, and transfers, these cases
proceeded to judgment in the Northern District of California—where, on November 30, 2021,
Judge Edward M. Chen dismissed all of the remaining claims with prejudice. Approximately two
weeks later, this case was filed, fulfilling Mr. Isaacs' promise (or threat) of never-ending litigation.

This lawsuit is ostensibly brought by "The Coring Company," which supposedly developed

an app called "The App Place"; but both appear to be inventions of Mr. Isaacs' imagination. In reality, this suit is Mr. Isaacs' attempt to relitigate claims that were or could have been brought in cases already adjudicated in Apple's favor. It is, in the Complaint's own words, an unabashed attempt to evade the "Ninth Circuit law" that "defeated numerous valid Apple antitrust claims" in the "hope[] [that] Eleventh Circuit law" will bring a more favorable outcome. Compl. ¶¶ 97, 171. This blatant effort to forum shop, and avoid a prior judgment, should not be indulged.

Judge Chen is best situated to preside over this case and evaluate the preclusive effect of his November 30 judgment, given his familiarity with the parties, subject matter, and allegations. Moreover, this case's only ties to Florida—Coring's supposed incorporation and Mr. Isaacs' supposed residence—are belied by state records and Mr. Isaacs' own court filings. The alleged conduct occurred not in Florida but in California, where litigation concerning both the App Store and the relevant patent has already unfolded, where relevant documents are maintained, and where potential witnesses reside and work. This case should be transferred under 28 U.S.C. § 1404(a) (convenience), the first-filed rule, and 28 U.S.C. § 1406(a) (patent venue).

## II. BACKGROUND

This case does not arrive in this Court on a blank slate. For over a decade, Apple has been litigating antitrust challenges concerning the App Store in the Northern District of California. That includes *Coronavirus Reporter et al. v. Apple Inc.*, No. 21-cv-5567 (N.D. Cal.)—a case brought by Mr. Isaacs and entities he controls, alleging a host of antitrust, contract, fraud, and other claims. This case is a near carbon-copy of that one, filed in this Court not because of any connection to Florida but for the admitted purpose of evading an adverse judgment and Ninth Circuit precedent. It should be transferred to the Northern District of California.

**A.      The Northern District of California Has Long Heard Antitrust Cases, Like This One, Challenging Apple's App Store Business Model**

Headquartered in Cupertino, California, Apple offers an array of technology products to consumers and also operates the App Store, a platform for app developers to distribute apps to iPhone and iPad users.  Declaration of M. Rollins ("Rollins Decl.") ¶¶ 3–4.  To provide a curated ecosystem that protects users' privacy and security, Apple's App Review team—also led from California—reviews every app before distribution on the App Store to ensure it complies with the company's guidelines.  Declaration of Rachel S. Brass ("Brass Decl.") Ex. 21 at 2835:10–15 (Schiller Trial Testimony); Rollins Decl. ¶¶ 10–13.  The App Store has been a phenomenal success:  Consumers enjoy access to an enormous selection of apps—83% of which are free—with security and privacy protections that have consistently outpaced those of competitors.  *See Epic Games, Inc. v. Apple Inc.*, 2021 WL 4128925, at *21, 24, 70–75 (N.D. Cal. Sept. 10, 2021).

For more than ten years, Apple has been litigating antitrust challenges against the App Store in the Northern District of California.  That includes a putative class action brought by consumers in 2010, a subsequent action brought by developers, and, more recently, a suit brought by Epic Games, Inc.  *See Pepper v. Apple Inc.*, No. 11-cv-6714, Dkt. 1 (N.D. Cal. Dec. 29, 2011); *Cameron v. Apple Inc.*, No. 19-cv-3074, Dkt. 1 (N.D. Cal. June 4, 2019); *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-5640, Dkt. 1 (N.D. Cal. Aug. 13, 2020). Other cases are also pending there.  *See, e.g.*, *Reilly v. Apple Inc.*, No. 21-cv-4601 (N.D. Cal.).  The first trial in these cases transpired in 2021, involving over 900 exhibits and dozens of witnesses.  *Epic Games, Inc. v. Apple Inc.*, 2021 WL 4128925, at *1–2 & n.2 (N.D. Cal. Sept. 10, 2021).  Apple prevailed on all but one claim, including all antitrust claims.  *Id.* at *1.

**B.      Mr. Isaacs' Previous Cases Are Consolidated In, And Then Dismissed By, The United States District Court For The Northern District of California**

Mr. Isaacs is a former physician "who suffers from a neuropsychiatric illness."  *Isaacs v.*

*Arizona Bd. of Regents*, 608 F. App'x 70, 72 (3d Cir. 2015).  The New Hampshire Board of Medicine revoked his medical license in 2014 for his failure to disclose material facts.  Brass Decl. Ex. 22 (N.H. Bd. Order).  Mr. Isaacs has since filed and lost a bevy of cases across the federal courts. *See*, *e.g.*, *Isaacs v. USC Keck Sch. of Med.*, 846 F. App'x 519, 520 (9th Cir. 2021); *Isaacs v. Trustees of Dartmouth Coll.*, 2019 WL 10837707, at *1 (1st Cir. Jan. 3, 2019); *Isaacs v. Dartmouth Hitchcock Med. Ctr.*, 2020 WL 3096529, at *4 (C.D. Cal. Feb. 3, 2020); *Isaacs v. U.S. Dept. of Edu.*, No. 17-11221-FDS, Dkt. 61 (D. Mass. Mar. 8, 2019).

Beginning in January 2016, Mr. Isaacs litigated two cases in the Northern District of California involving his patent for "Post-Page Caller Name Identification System," U.S. Patent No. 8,861,698 (the "'698 Patent")—since reissued as the patent asserted here, U.S. Patent No. RE48,847 (the "'847 Patent").  *See WhitePages, Inc. v. Jeffrey Isaacs, et al.*, Case No. 3:16-cv-00175-RS, Dkt. 1 (N.D. Cal. Jan. 11, 2016); *Greenflight Venture Corp. v. True Software Scandinavia A.B.*, Case No. 3:16-cv-01837-RS, Dkt. 1 (N.D. Cal. Jan. 14, 2016).  The court found the '698 Patent ineligible (*i.e.*, it involved unpatentable subject matter).  *WhitePages, Inc.*, Case No. 3:16-cv-00175-RS, Dkt. 59 (N.D. Cal. Sept. 7, 2016).  In 2017, the Federal Circuit affirmed that judgment.  *Whitepages, Inc. v. Isaacs*, 698 F. App'x 613, 614 (Fed. Cir. 2017).

In 2021, Mr. Isaacs trained his sights on Apple.  Between January and July, he filed three cases against Apple across three jurisdictions asserting substantially the same antitrust, fraud, RICO, and contract claims.  *See Coronavirus Reporter v. Apple, Inc.*, No. 21-cv-47, Dkt. 1 (D.N.H. Jan. 19, 2021); *Primary Prods. LLC v. Apple Inc.*, No. 21-cv-137, Dkt. 1 (D. Me. May 17, 2021); *Coronavirus Reporter v. Apple Inc.*, No. 21-cv-5567-EMC, Dkt. 1 (N.D. Cal. July 20, 2021). These claims were brought by Mr. Isaacs either in his individual capacity or on behalf of various entities under his control, including Coronavirus Reporter, CALID Inc., and Primary Productions.

4

*See* Brass Decl. ¶ 2.  As just a few examples, Mr. Isaacs is CALID's CEO, he managed communications with Apple regarding the Coronavirus Reporter app, and the entities' attorney, Mr. Keith Mathews, refers to Mr. Isaacs as his "client" (even when Mr. Isaacs purports to proceed pro se). Brass Decl., Exs. 11–14.  Although Mr. Isaacs fought transfer of his New Hampshire and Maine suits to the Northern District of California, these cases merged into one action before Judge Edward M. Chen in that district.  *See Coronavirus Reporter v. Apple Inc.*, 2021 WL 5936910, at *5 (N.D. Cal. Nov. 30, 2021) (describing the procedural history).

All told, Mr. Isaacs and his entities filed seven complaints against Apple in 2021—before bringing this case.  Each complained that the App Store business model, pursuant to which Apple reviews each app developed using Apple's proprietary software before permitting it to be distributed on the App Store, violates the Sherman Act.  They also asserted fraud, contract, and RICO claims, ranging from allegations of a grand conspiracy to "mislead and or defraud developers into abandoning their apps" to baseless accusations that Apple had engaged in "witness intimidation." Brass Decl., Ex. 5 ("CR FAC") ¶¶ 270, 276, 297.

After extensive briefing and a hearing, Judge Chen issued a 34-page order dismissing all claims with prejudice on November 30, 2021.  *Coronavirus Reporter*, No. 21-CV-05567-EMC, 2021 WL 5936910, at *1, 5 (N.D. Cal. Nov. 30, 2021).  The court found that no relevant market— including asserted "smartphone app distribution" and "smartphone apps" markets—had been alleged, nor had the plaintiffs alleged antitrust injury.  *Id.* at *3, *6 (quotations omitted).  The court also dismissed the remaining claims, concluding that the plaintiffs had not alleged that Apple breached or frustrated a specific provision of any relevant contract and that the RICO and fraud claims relied on "vague, conclusory allusions."  *Id.* at *15–18.  Mr. Isaacs and the company plaintiffs have each filed motions for reconsideration of that order, citing the filing of this case as one

of several reasons to vacate the judgment.  Brass Decl., Ex. 8 & 9 (plaintiffs' motions for recon-

sideration); *but see id.*, Ex. 10 at 3–9 (Apple's opposition explaining the reasons to reject plaintiffs'

motions).  They also noticed an appeal.  Brass Decl. ¶ 7.

**C.     After Repeated Threats From Mr. Isaacs, The Coring Company Files This Case**

Well before Judge Chen issued his decision, Mr. Isaacs began to threaten Apple with an

amorphous "[p]atent [i]nfringement claim."  Brass Decl. Ex. 15.  Mr. Isaacs first threatened suit

on September 20, 2021—even though the '698 patent had been deemed ineligible at that time and

the '847 patent had not yet issued.  *Id.*  In subsequent emails, Mr. Mathews confirmed that

Mr. Isaacs intended to "file[] a patent infringement claim against Apple in Florida."  Brass Decl.

Ex. 16.  And on December 8, Mr. Mathews and Mr. Isaacs each reiterated in separate emails that

they would sue Apple for "the patent central to the Florida case," among other things.  *Id.*, Ex. 17.

This case was filed on December 15, 2021, ostensibly by The Coring Company.  Compl.

at 1.  Perpetuating a troubling pattern, Coring has not filed the required disclosure statement—

despite being put on notice by Apple that it had failed to do so.  Dkt. 20 at 1; *see also* Brass Decl.

¶ 3 & Exs. 1, 3, 4.  Regardless, it remains clear that Coring is Mr. Isaacs' instrument.  Coring itself

appears to be entirely fictitious:  The complaint says it is a "Florida C Corporation," Compl. ¶ 14,

but the Florida Secretary of State's database has no corporate records attesting to its existence,

Brass Decl. ¶ 14 & Ex. 18.[1]  The patent underlying Coring's infringement claim names Mr. Isaacs

as its sole inventor, Dkt. 1-4, which, according to the Patent and Trademark Office's database, has

not been assigned to Coring, Brass Decl. ¶ 15 & Ex. 19.  And recent filings by Mr. Isaacs (and his

---

[1]  Indeed, this name is affiliated with an altogether different entity.  The Coring Company is a Norwegian technology firm that assists with mining, mineral, and other ground investigations. Brass Decl. Ex. 23 (https://www.thecoring.com/).  Its United States office is located in Palo Alto, California.  *Id.*

entities) in *Coronavirus Reporter* concede that the causes of action in this case are "his patent infringement claims" and that he "helped draft the complaints."  Brass Decl. Ex. 7 at 3; Ex. 8 at 17–18.  All of this is consistent with the fact that Mr. Isaacs and his counsel threatened patent infringement claims well before the purported creation (or invention) of the Coring Company.  Brass Decl. ¶¶ 11–13.

The claims here largely retread the ground covered in *Coronavirus Reporter*.  In addition to asserting the threatened allegations concerning Mr. Isaacs' patent (the reissued version of the '698 patent previously found ineligible in the Northern District of California), Dkt. 1-4, Coring presses the same basic theories of liability advanced and rejected in *Coronavirus Reporter*.  As in that case, for instance, Coring complains that "Apple has used exclusionary design and restraints of trade to substantially foreclose potential competition from alternative means to download apps," and that the DPLA is the vehicle through which Apple effects its allegedly anticompetitive policies.  Compl. ¶¶ 72, 74.  Coring likewise reiterates the theory from *Coronavirus Reporter* that Apple's "ability to totally censor and control the apps that may be used on iOS device[s]" is unlawful.  *Id.* ¶ 102.  Indeed, Coring admits that this case is designed to evade "Ninth Circuit law" and retest Mr. Isaacs' theories in what it believes is a more favorable forum.  *Id.* ¶¶ 97, 171.

### III.  ARGUMENT

This case should be transferred to the Northern District of California on three independent grounds:  First, in the interest of justice and for the convenience of witnesses and the parties, 28 U.S.C. § 1404(a); second, under the first-filed rule, *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013); and third, to cure the misfiling of a patent claim in the wrong venue, 28 U.S.C. § 1406(a).

### A.    The Northern District Of California Is The More Convenient Venue (§ 1404(a))

This Court may transfer "any civil action to any other district" if the action "might have

been brought" there and transfer will enhance "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Under this two-part analysis, courts first "consider whether the case might have been brought in the transferee court." *Freedom Watch Inc. v. Judicial Watch, Inc.*, 289 F. Supp. 3d 1270, 1273 (S.D. Fla. 2018). If so, they ask "whether the balance of factors . . . weighs in favor of transferring th[e] action," *id.*, including "(1) convenience of the parties; (2) convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to secure the presence of unwilling witnesses; (5) the cost of obtaining the presence of witnesses; and (6) the public interest." *Cellularvision Tech. & Telecomm. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007).

It is beyond dispute that this case "might have been brought" in the Northern District of California, 28 U.S.C. § 1404(a), as Apple is not only headquartered in Cupertino, California, but a substantial part of the alleged events also took place there, Compl. ¶ 15; Rollins Decl. ¶¶ 3, 11–15; *see also* 28 U.S.C. § 1391(b)(1)–(2). Because the "balance of factors" also favors transfer, the Court should transfer this case to the Northern District of California. *Freedom Watch Inc.*, 289 F. Supp. 3d at 1273.

### 1.    Public Interests Support Transfer

Courts "consider, based on the totality of the circumstances, the interests of justice as well as several other public interest factors." *Carucel Investments, L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1228–29 (S.D. Fla. Jan. 19, 2016). These factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; . . . and the unfairness in burdening citizens in an unrelated forum with jury duty," *id.* at 1229, as well as "trying related litigation together, and having a judge who is familiar with the applicable law try the case," *Marcel Fashions Grp. v. Lucky Brand Dungarees, Inc.*, 2011 WL

13217487, at *7 (S.D. Fla. July 19, 2011) (quotation omitted).  Critically, "the public interest weighs heavily in favor" of transfer where a case presents "issues concerning possible claim preclusion" and another court "has unique and extensive knowledge of the history of the prior litigation."  *Id.* at *9; *see also Sutherlin v. Wells Fargo Bank*, 2017 WL 7796325, at *1 (S.D. Fla. July 27, 2017) ("Courts routinely transfer cases to districts where the court had handled related litigation and is familiar with the relevant issues.").

Apple intends to move to dismiss Coring's complaint because, among other things, some or all of the claims asserted are precluded by the final judgment in *Coronavirus Reporter*.  For instance, the two markets that Coring alleges here appear to be (although the complaint does not refer to them consistently) "Smartphone App Distribution" and "Smartphone Apps" markets, Compl. at 39—each of which was asserted and rejected in *Coronavirus Reporter*.  *See* CR FAC ¶¶ 11, 121, 209; *Coronavirus Reporter*, 2021 WL 5936910, at *3, *6–13.  Based off these overlapping markets, Coring also asserts substantively cloned claims:  Monopoly maintenance of Apple's control of the App Store under § 2 of the Sherman Act, denial of access to the same "essential facility" of iOS and its underlying code, unreasonable restraint of trade based on the same provisions of the DPLA, tying of iOS devices to the App Store under § 1 of the Sherman Act, and so on.  *Compare* Compl. ¶¶ 118–174, *with* CR FAC ¶¶ 160–240.  This Court need not and should not resolve the question of res judicata now.  It suffices to say that "[a] substantial issue exists about whether" Coring's claims "are barred by the final judgment" in *Coronavirus Reporter*.  *Marcel Fashions Grp.*, 2011 WL 13217487, at *7; *see also Kaiser Aerospace & Elecs. Corp. v. Teledyne Indus.*, 244 F.3d 1289, 1296 (11th Cir. 2001) ("Under res judicata, also known as claim preclusion, a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action.").  Apple also intends to argue, at the appropriate

time and in the appropriate forum, that any of the Coring claims that are not precluded do not state a claim on which relief could be granted.

Under these circumstances, the Northern District of California is the most logical forum for resolving this case.  Courts in that district have overseen antitrust challenges to the App Store for years, as well as the litigation involving Mr. Isaacs' '698 Patent.  *See supra* pp. 2–4.  And Judge Chen in particular "oversaw the prior litigation and entered the [final judgment]" most central to this litigation, allowing him to more easily "make a fully informed decision about whether [the] present suit is barred by the final judgment in the earlier case."  *Marcel Fashions Grp.*, 2011 WL 13217487, at *7, 9; *see also Gillig v. Nike, Inc.*, 2008 WL 11429501, at *4 (S.D. Fla. Dec. 16, 2008) (transferring case because the "court having a substantial familiarity with the litigation" could make a decision "regarding the preclusive effect of his own prior orders . . . much more efficiently and with less expenditure of judicial resources"); *Weinberger v. Tucker*, 391 F. Supp. 2d 241, 245 (D.D.C. 2005) (holding that "the interests of justice strongly support a transfer to the court that reviewed and decided the prior litigation between the parties and their privies, especially because this case turns on the preclusive effect of that court's judgment").

Other public interest factors likewise favor transfer.  Coring's claims lack any nexus to Florida, and the Complaint identifies no relevant personnel living or working in Florida.  *See infra* pp. 11–14.  By contrast, the Northern District of California "has a substantial interest in adjudicating controversies involving a corporation employing hundreds of California residents."  *Carucel Inv.*, 157 F. Supp. 3d at 1229; *see also* Rollins Decl. ¶ 3 (explaining that Apple's headquarters are located in the Northern of District of California, where it employs tens of thousands of California residents).  For the same reason, there is no risk of overburdening potential jurors in the Northern District of California, for any such burden is "light" where the defendant employs many California

residents.  *Carucel Inv.*, 157 F. Supp. 3d at 1229.

Finally, transfer would help relieve "one of the busiest dockets in the country."  *United States, ex rel Florida v. ApolloMD Inc.*, 2020 WL 10181736, at *8 (S.D. Fla. Aug. 3, 2020); *see also Exum v. Nat'l Tire & Battery*, 2020 WL 5506489, at *1 (S.D. Fla. Sept. 14, 2020) (recognizing that the Southern District of Florida maintains an "already overburdened docket").  Although caseload statistics show that this district had fewer pending civil cases than the Northern District of California, it has a significantly more impacted criminal docket—2,237 pending cases to 702.  *See* U.S. Courts, Federal Judicial Caseload Statistics 2020 Tables, https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2020-tables.  Given the priority assigned to criminal prosecutions, it will "likely be less expensive and more efficient for" a civil antitrust case like this one "to proceed in the transferee district."  *ApolloMD Inc.*, 2020 WL 10181736, at *8.  Thus, even this "minor consideration" supports transfer.  *Trace-Wilco, Inc. v. Symantec Corp.*, 2009 WL 455432, at *4 (S.D. Fla. Feb. 23, 2009).

## 2.    Private Interests Support Transfer

For the convenience of the parties and potential non-party witnesses, "[c]ourts routinely transfer cases when the principal events occurred . . . in another district."  *ApolloMD Inc.*, 2020 WL 10181736, at *7.  Coring's allegations center exclusively on alleged conduct by Apple and its employees in the Northern District of California.  For example, the allegedly "exclusionary design and restraints of trade," "non-negotiable Developer Distribution Agreement," and unidentified patent infringement are tied to Cupertino—where Apple's App Store business is led, its contracts are signed, and, presumably, whatever allegedly infringing conduct arose.  Compl. ¶¶ 72, 74, 176; *see also* Rollins Decl. ¶¶ 11–16; *Carucel Inv.*, 157 F. Supp. 3d at 1225 ("[D]istrict courts often grant motions to transfer venue in patent infringement cases when the plaintiff has chosen a forum that

is not the center of gravity of the accused activity." (internal quotation marks omitted)).

By contrast, Coring has not alleged even a single event occurring in Florida. Indeed, there are only two allegations linking this case to Florida at all: That Coring is a "Florida C Corporation" and that the relevant patent was "awarded to a Florida inventor." Compl. ¶¶ 10, 14. Public records refute both. There is no "Coring Company" (or other similar permutation) in the corporate records maintained by the Florida Secretary of State. *See* Brass Decl. ¶ 14. And the patent appended to the Complaint names the inventor as Mr. Isaacs, and lists his address as "Fort Washington, PA." Dkt. 1-4 at 1. In *Coronavirus Reporter*, Mr. Isaacs represented to the California court that his address was in Pennsylvania. Brass Decl. Ex. 9 at 1. Thus, this case has no link to this district— other than being as far away as possible from the venue Mr. Isaacs seeks to evade.[2]

Moreover, the convenience of the parties, "convenience of witnesses, access to proof, and locus of operative facts" favor transfer as well. *Del Monte Fresh Produce, N.A. v. Amco Ins. Co.*, 2020 WL 4353362, at *2 (S.D. Fla. Apr. 9, 2020). As Coring concedes, Apple is headquartered in the Northern District of California. *See* Compl. ¶ 15; Rollins Decl. ¶ 3; *see also Trace-Wilco, Inc. v. Symantec Corp.*, 2009 WL 455432, at *3 (S.D. Fla. Feb. 23, 2009) ("[T]he location of the alleged infringer's principal place of business is often the critical and controlling consideration in

---

[2] Even if the Coring Company did exist, it was formed no earlier than "early December 2021" for the clear purpose of bringing claims that purportedly would not be subject to Apple's forum selection clauses in the Developer Agreement and DPLA, which it alleges it did not sign. Compl. ¶¶ 14, 171; *see also* Rollins Decl. Ex. B ¶ 14.10; Rollins Decl. Ex. A ¶ 17. Any connection to Florida "is therefore of a more recent vintage"—and purely for the purpose of obtaining a perceived tactical advantage—and should not be given any weight. *MindbaseHQ LLC v. Google LLC*, 2021 WL 1923142, at *5 (S.D. Fla. May 13, 2021). Moreover, the execution of the DPLA is a prerequisite to any claim that Apple has stymied Coring's ability to distribute an app—because executing such an agreement is a prerequisite to submitting native iOS apps for distribution through the App Store, Rollins Decl. ¶¶ 6, 10, 12–13—Coring cannot avoid the forum selection clause by initially refusing to sign (or omitting allegations that it has signed) such an agreement.

adjudicating transfer of venue motions."). And while Coring's allegations are anything but clear about who committed the alleged conduct, most witnesses would likely be Apple employees who live and work in the Northern District of California. Rollins Decl. ¶¶ 11–16. It would be burdensome for them to travel thousands of miles to Florida to testify in this case, *id.* ¶ 12; convenience "is best served when witnesses are allowed to testify in the forum where they reside." *Morrissey v. Subaru of Am., Inc.*, 2015 WL 9583278, at *3 (S.D. Fla. Dec. 31, 2015); *see also ApolloMD Inc.*, 2020 WL 10181736, at *5 (convenience of witnesses "the most important factor" in transfer analysis (quotation omitted)); *MindbaseHQ LLC v. Google LLC*, 2021 WL 1923142, at *5 (S.D. Fla. May 13, 2021) (transfer appropriate where none of defendant's witnesses "reside in this District" and travel would be burdensome).

The Northern District of California also is more convenient for counsel. *See ApolloMD Inc.*, 2020 WL 10181736, at *6. Neither party's lead counsel resides in the Southern District of Florida. But many of Apple's attorneys practice in the Northern District of California, and Coring's lead counsel has more experience in that district than this one—including his representation of the plaintiffs in *Coronavirus Reporter*. Brass Decl. ¶ 2. In addition, Mr. Isaacs has recently emphasized the key role played by a California attorney, S. Michael Kernan, in formulating and prosecuting the very antitrust claims Mr. Isaacs seeks to relitigate here. Brass Decl. Ex. 7 at 18.

Moreover, sources of proof relating to the App Store—central to not only Coring's antitrust claims but also the allegations of alleged infringement—are most "likely to be located in California," where Apple's products "were designed, developed, and engineered" and its policy decisions were made. *MindbaseHQ LLC*, 2021 WL 1923142, at *5. As explained by Mr. Rollins, "important documentary evidence," *ApolloMD Inc.*, 2020 WL 10181736, at *6, relating to Coring's antitrust

and patent allegations is located in California, Rollins Decl. ¶¶ 11–12, 14–15; *see also In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."). And Coring, for its part, "has not identified any evidence stored in Florida." *ApolloMD Inc.*, 2020 WL 10181736, at *6.

For all these reasons, Coring's choice of forum is entitled to no weight. The import of that choice is "considerably weakened" where, as here, the case is "filed [] as a class action" with "hundreds of potential plaintiffs." *Clinton*, 2020 WL 6120565, at *9; *see also* Compl. ¶ 111 (alleging the putative class includes "millions" of individuals). Any remaining force gives way because (1) "the operative facts underlying the . . . action did not occur within the forum chosen by the Plaintiff," *Gonzalez v. Pirelli Tire, LLC*, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008); (2) the plaintiff "is not a resident" of the forum, *SEC v. Church-Koegel*, 2020 WL 5535759, at *6 (S.D. Fla. Sept. 15, 2020); and (3) there is an "indication that plaintiff's choice of forum is the result of forum shopping," *Clinton v. Sec. Benefit Life Ins. Co.*, 2020 WL 6120565, at *8 (S.D. Fla. June 29, 2020) (quoting *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001)); *see also Balloveras v. Purdue Pharma Co.*, 2004 WL 1202854, at *1 (S.D. Fla. May 19, 2004) ("less than normal deference" given to choice of forum where "facts underlying the action occurred" in another district). Resolving any possible ambiguity about that final question, the Complaint *admits* to forum-shopping—which it attempts to justify only through a fantastical conspiracy in which Apple has "somehow . . . been able to influence . . . the Ninth Circuit." Compl. ¶¶ 42, 97, 171. Having provided no legitimate reason to litigate in this forum, and expressly admitted to an illegitimate one, Coring's choice of forum should be disregarded.

\*\*\*

In sum, the totality of the circumstances heavily favors transfer.  The Northern District of California is not only the locus of the underlying dispute but also the most logical forum for this case given the location of the potential witnesses, counsel, documents, and related litigation.  Thus, the Northern District of California is the more convenient forum in which the interests of justice will be served most efficiently.  *See* 28 U.S.C. § 1404.

## B.    The First-Filed Rule Also Favors Transfer To The Northern District of California

For similar reasons, the first-filed rule provides an independent basis for transferring this case to the Northern District of California.  *See Zampa v. JUUL Labs, Inc.*, 2019 WL 1777730, at \*5 n.2 (S.D. Fla. Apr. 23, 2019).  That rule "provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case."  *Collegiate Licensing Co.*, 713 F.3d at 78.  The Court must evaluate three factors:  "(1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues."  *Clinton v. Sec. Benefit Life Ins. Co.*, 2020 WL 1185275, at \*2 (S.D. Fla. Mar. 12, 2020).  "[T]he parties and issues need not be identical, but rather the parties and issues should substantially overlap."  *Lott v. Avantage Sales & Mktg. LLC*, 2011 WL 13229682, at \*2 (N.D. Ala. Jan. 26, 2011).

First, the chronology is not subject to dispute.  The courts in New Hampshire and Maine ordered Mr. Isaacs's first two lawsuits transferred to the Northern District of California because it was the proper venue on May 14 and August 13, 2021, and Plaintiffs filed their complaint in *Coronavirus Reporter* in California on July 20, 2021—months prior to this case.  *See* Brass Decl. ¶ 2 & Exs. 1–3.  After Mr. Isaacs' lawsuits merged, Judge Chen oversaw substantial motion practice before entering judgment.  Two motions to dismiss were briefed, two motions for preliminary injunctions were litigated, and a host of other disputes were adjudicated.  *See* Brass Decl. Ex. 3.

And Judge Chen is currently considering the same theories pleaded here in the context of motions for reconsideration premised (in part) on this case. *Id.*; *see also* Brass Decl. Exs. 7–8. Thus, "it is in the interests of judicial economy for this case to be transferred" to the district where litigation has reached a more "advanced procedural posture . . . as compared to this case." *Zampa*, 2019 WL 1777730, at *4.[3]

Second, the real parties in interest are identical. Apple is the defendant in both cases. *See* Brass Decl. ¶ 2. And while the nominal plaintiffs differ, all indicia show that not only is Coring fictitious, but also that prosecution of this case is directed by Mr. Isaacs—the same individual driving *Coronavirus Reporter*. *See Helvetia Coal Co. v. United Mine Workers*, 2017 WL 3669415, at *3–4 (W.D. Pa. Aug. 23, 2017) (first-filed rule applies where "real parties in interest" are "substantially similar"). Yet even taking the plaintiffs' identities at face value, they are all similarly positioned app developers seeking to challenge Apple's conduct relating to its app review process and associated policies. *Cf. Micosukee Tribe*, 2020 WL 9720369, at *3 (plaintiffs similar where they were two different tribes challenging the same conduct). That is enough, for "[t]he first-filed rule does not require complete identity of the parties." *McGarry v. Delta Air Lines, Inc.*, 2018 WL 6928799, at *4 (N.D. Ga. Nov. 20, 2018).

Indeed, this similarity is underscored by the fact that Coring falls within the class proposed in *Coronavirus Reporter*. *See Zampa*, 2019 WL 1777730, at *4 (plaintiffs are also considered

---

[3] That Judge Chen dismissed the plaintiffs' claims in *Coronavirus Reporter* with prejudice does not mean the case is no longer "pending" within the meaning of the first-filed rule. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). Rather, "[c]ourts have routinely applied the first-filed rule when the dismissal of the earlier-filed case is pending on appeal." *Miccosukee Tribe v. U.S. Dep't of Treasury*, 2020 WL 9720369, at *3 (S.D. Fla. Oct. 1, 2020) (collecting cases); *see also Carrera v. First Am. Home Buyers Protection Co.*, 2012 WL 13012698, at *3 (C.D. Cal. Jan. 24, 2012) (concluding that earlier-filed case was "pending" where "plaintiff has both appealed the judgment and filed a motion for relief from the judgment in the lower court").

substantially similar if the plaintiff in the later-filed case would be included in the class proposed by the earlier-filed case). The putative class in *Coronavirus Reporter* encompassed "[a]ll U.S. iOS developers of any app that was excluded through disallowance and/or ranking suppression on the App Store." CR FAC ¶ 149. Coring alleges that it is a domestic company, Compl. ¶ 14, that has "developed an innovative app distribution platform," *id.* ¶ 1, "for iOS," *id.* ¶ 4, and which would not be "allow[ed]" on the App Store, *id.* ¶ 105—in other words, that it is a U.S. iOS developer of an app that was excluded from the App Store.

Finally, there is "substantial overlap" among the relevant issues. *Zampa*, 2019 WL 1777730, at *5. Both complaints allege that Apple acts anticompetitively by barring developers from distributing native apps outside the App Store and maintaining exclusive control over the app review process. *See*, *e.g.*, Compl. ¶¶ 76–77; CR FAC ¶¶ 191, 198. Coring challenges the same provisions in Apple's DPLA, one of the contracts governing the distribution of native apps on the App Store, that the plaintiffs targeted in *Coronavirus Reporter*. *See* Compl. ¶¶ 74, 132; CR FAC ¶¶ 198–201. The markets alleged here—smartphone apps and smartphone app distribution—were also alleged (and rejected) in *Coronavirus Reporter*. *See* Compl. at 39; CR FAC ¶¶ 11, 121, 209. And Coring admits that *Coronavirus Reporter* also focused on "free apps"—the same purported focus of this case. Compl. ¶¶ 55, 96. Coring even recapitulates Mr. Isaacs' theory that Apple somehow purchases all apps distributed on the App Store from developers, Compl. ¶¶ 99, 105, despite Judge Chen's sound rejection of that notion, *see Coronavirus Reporter*, 2021 WL 5936910, at *12 (concluding that this theory "does not align with the economic reality that . . . [d]evelopers are engaged in a *transaction* with consumers, not selling to Apple"). Hence, the issues in this case are essentially the same as those in *Coronavirus Reporter*. *Cf. Zampa*, 2019 WL 1777730, at *5 (issues similar where both complaints alleged "that Defendant falsely and deceptively advertised

e-cigarettes and . . . marketed those products as safe").

The addition of certain causes of action in this case does not change that analysis. As a baseline matter, "the existence of additional claims . . . does not . . . justify[] divergence from the first-filed rule." *Nat'l Beverage Corp. v. Energy Brands, Inc.*, 2008 WL 11333336, at *4 (S.D. Fla. Aug. 14, 2008). And the specific claims asserted here also compel transfer. The patent at issue in this case is itself related to prior litigation in the Northern District of California, *supra* pp. 3–4, the alleged infringement is tied to the alleged antitrust violation, Compl. ¶ 62, and Coring's assertion of an infringement claim provides an independent basis for transfer in any event, *see infra* pp. 18–19. The state law claims Coring asserts are derivative of the federal antitrust claims, meaning that "the issues to be addressed by the court in each lawsuit are essentially identical" and "the only difference is the application of California versus Florida substantive law." *Banegas v. Procter & Gamble Co.*, 2016 WL 5940104, at *1 (S.D. Fla. Sept. 28, 2016); *see also Zampa*, 2019 WL 1777730, at *5 (explaining that differences in substantive state law do not overcome the first-filed rule). None of this provides any reason to depart from the first-filed rule.

Because "the chronology of events, the similarity of the parties, and the similarity of the issues, all weigh in favor of transfer, the first-filed rule applies" and this case should be transferred. *Lianne Yao v. Ulta Beauty Inc.*, 2018 WL 4208324, at *3 (S.D. Fla. Aug. 8, 2018).

**C.    The Northern District of California Is The Proper Forum To Hear Coring's Patent Infringement Claim (§ 1406(a))**

In an apparent attempt to distinguish this case from *Coronavirus Reporter*, Coring added a claim alleging infringement of the '847 Patent. That distinction is illusory as Mr. Isaacs has since argued that the same claim should be added to *Coronavirus Reporter*. *Coronavirus Reporter*, No. 21-cv-5567-EMC, Dkt. 91 (N.D. Cal. December 28, 2021). But in any event, Coring's patent

infringement claim does not provide a reason to maintain suit here; it instead provides an independent basis for transfer.

Patent claims must "be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *see also TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017). That is not the Southern District of Florida. As noted above, Apple is a California corporation headquartered in Cupertino. Compl. ¶ 15. And Coring does not allege that Apple committed any acts of infringement in Florida.

Start with Coring's allegations of direct infringement. None of the alleged conduct to which it refers is tied to Florida. *See* Compl. ¶¶ 59–60. Indeed, the most the Complaint can muster is the conclusory allegation that "Apple transacts business in Florida." *Id.* ¶ 12. That says nothing about the locus of any alleged "acts of infringement." 28 U.S.C. § 1400(b).

The same is true for the allegations of contributory and induced infringement, which also do not establish or allege any connection to Florida. There are no allegations that Apple "induces its users" through any conduct that took place in this district. Compl. ¶ 61. The purported development and provision of a "complete system for reverse phone lookup via an SS7 CNAM query to users . . . who place that system into use when they enter a phone number"—whatever that is and however it supposedly infringes Mr. Isaacs' patent—is also untethered to any conduct in Florida. *Id.* And the generic accusation that in 2014 "Apple allowed multiple competing apps on the App Store to infringe the patent" is similarly adrift from any geographic place. *Id.* ¶ 56; *see also MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 2019 WL 4963253, at *16 (N.D. Cal. Oct. 8, 2019) (holding that even under a "theory [of] contributory infringement, the contributory act would still have to occur in this District").

In other words, Coring has entirely failed to plead any facts that could connect any "alleged infringement, whether direct or indirect, to this judicial district as required by § 1400(b)." *S. Visions, LLP v. Red Diamond, Inc.*, 2018 WL 8221528, at *3 (N.D. Ga. Dec. 10, 2018). The Court accordingly should transfer the case to the Northern District of California. *See* 28 U.S.C. § 1406(a) (a court "shall dismiss, or if it be in the interest of justice, transfer" any "case laying venue in the wrong division or district").

## IV. CONCLUSION

For the foregoing reasons, Apple respectfully requests that this case be transferred to the U.S. District Court for the Northern District of California.

## LOCAL RULE 7.1(a)(3) CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3) of the U.S. District Court for the Southern District of Florida, counsel for the moving party has conferred with counsel for Plaintiff in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Dated: January 17, 2022

Respectfully submitted,

By:    /s/ Caroline M. Iovino

McDERMOTT WILL & EMERY LLP
CAROLINE M. IOVINO (Florida Bar No. 181110)
  ciovino@mwe.com
333 S.E. 2nd Avenue, Suite 4500
Miami, FL 33131
Telephone:    (305) 358-3500
Facsimile:    (305) 675-8146

GIBSON, DUNN & CRUTCHER LLP
MARK A. PERRY (pro hac vice)
  mperry@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:    (202) 955-8500
Facsimile:    (202) 467-0539

RACHEL S. BRASS (pro hac vice)
  rbrass@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:    (415) 393-8200
Facsimile:    (415) 374-8429

*Attorneys for Defendant Apple Inc.*

## CERTIFICATE OF SERVICE

I, Caroline Iovino, hereby certify that on this 17th day of January, 2022, I caused the foregoing document to be served on all parties via the Court's CMF/ECF system.