Keith Mathews
Associated Attorneys of New England
PO Box 278
Manchester, NH 03105
603-622-8100
keith@aaone.law

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| THE CORING COMPANY<br>on behalf of itself and all others similarly situated<br><br>               Plaintiffs,<br><br>vs.<br><br>APPLE INC.<br>               Defendant. | Case No. 21-cv-82235-AMC<br><br>**OBJECTION TO DEFENDANT APPLE INC'S MOTION TO TRANSFER VENUE** |

**OBJECTION TO DEFENDANT APPLE INC'S MOTION TO TRANSFER VENUE**

1. Apple and Gibson Dunn seek to move a Complaint invoking Florida Antitrust Act and SB7072 to California, which this Court should view with extreme skepticism and restraint. Nearly 65% of Americans use iPhones to conduct approximately 85% of internet commerce. To rule that every Florida developer must go to California court to uphold their rights to transact business over the national internet backbone would set dangerous precedent. It is certainly not the intent of the Florida state legislators to yield to California "Big Tech" law, as evidenced by SB7072. But that is precisely what the Defendants seek in their motion – recognition of the Apple "DPLA" as law of the land in Florida. The DOJ just last week cautioned Courts about blindly yielding to the DPLA. Particularly dangerous is that Gibson Dunn attempts to hide the fact the Court would be setting such precedent, by launching *ad hominem* attacks on a Florida physician & developer about his 1997 brain injury, and outrageously false assertions that a Covid app he worked on with a Fields Medal scientist is "his proxy."

2. The Sherman Act prohibits every contract or conspiracy in restraint of trade among several States, or with foreign nations. As the Complaint states, Apple's Tim Cook formed an illicit agreement with the Chinese government amounting to $275 billion. The Complaint is clear that Apple "diverted some $275 billion in Apple shareholder profits to China, without disclosing it to Apple's Board or shareholders. The agreement obtained no specific consideration for Apple – i.e., China did not promise anything in return. As such, the agreement constituted a one-sided bribe, made without consent of the corporation, and with the intent to defraud and dilute shareholders from nearly three years of corporate earnings."

3. Even in today's age of multi-trillion dollar stimulus, $275 billion goes a long way towards harming Apple shareholders and United States, and Florida, citizens. It is undisputed China has geopolitical ambitions that are close to this State – including strategic infrastructure maritime investments in the Bahamas, Caribbean nations, and South America. In other words, Apple's secret agreement likely directly funded adverse geopolitical activity near Florida, using funds obtained by exploiting Florida developers. SB 7072 doesn't say anything about moving such claims to California. As to direct damages to Plaintiff and other developers, Apple's anticompetitive restraints serve to increase the company's political allegiances and monetary gains, at the expense of small developers. Hence, discovery will prove that $275 billion diverted to China directly, or reasonably indirectly, damaged the small developer in Florida. This is a case that must be heard in Florida.

4. As such, Plaintiff has brought claims under Sherman Act, Florida Antitrust Act, *Fla. Stat. § 542.22*, and The Florida Deceptive and Unfair Trade Practices Act, *Fla. Stat. § 501.204*. Defendant Apple's Motion to Transfer Venue contains *zero* references to the two Florida statutes and zero explanation why they should be adjudicated by a California court. Put differently, Apple and Gibson Dunn are trying to push aside Florida Antitrust Act enforcement by launching *ad hominem* attacks against Dr. Isaacs (see below).

5. The Motion to Transfer likewise has *zero* mention of the China scandal with Mr. Cook, which certainly did not take place in Northern California, and is not subject to *res judicata* as the matter has never been litigated in *Coronavirus Reporter* or any other lawsuit. Hence Apple's arguments that all evidence and officers are located in Northern California is squarely at odds with the crux of the Complaint – that illicit activity in China is harming Floridians. For those three reasons, the Court should deny Apple's motion in entirety and

3

not dedicate Court resources to Apple and Gibson Dunn's twenty-some pages of *ad hominem,* sanctionable attacks on Dr. Jeffrey David Isaacs.

6. Moreover, Plaintiff's counsel has no record that Apple attempted to Meet & Confer on the Motion to Transfer. Nonetheless, the motion asserts that Local Rule 7.1(a)(3) was complied with "in good faith." This appears to be false. Apple and Gibson Dunn are requested to provide proof of their compliance with Local Rule 7.1, or to retract the improperly filed motion. Not only was the motion filed without a Meet & Confer, it contains numerous unacceptable known false statements intended to harm Dr. Isaacs – whom the Motion refers to as Mr. Isaacs, despite the fact Dr. Isaacs completed medical school at Florida's Cleveland Clinic. The Motion also knowingly falsely states that the Complaint is Dr. Isaacs' "eighth" lawsuit against Apple, and that *Coronavirus Reporter* and *Primary Productions* are his "proxies." Dr. Isaacs is willing to testify as to the falsity in an evidentiary hearing, if so requested. At the time Primary Productions was founded around 2015, its founders simply did not know Dr. Isaacs. To this day, Dr. Isaacs has zero ownership in Primary Productions and is not an officer of the company. As to Coronavirus Reporter, the evidence is clear that the Chief Medical Office of the company, and holder of almost 50% of the outstanding shares, is world-renowned cardiologist Dr. Robert Roberts. Dr. Roberts has touched the lives of tens of millions of individuals with his MBCK invention in the 1980s – the gold-standard lab test to detect heart attacks. Dr. Roberts gave a 45 minute interview to CNBC about his leadership of Coronavirus Reporter. He is in no way a "proxy" of Dr. Isaacs, in fact, it is the opposite – Dr. Isaacs is honored to have had the opportunity to work under and learn from Dr. Roberts.

7. Dr. Isaacs formed substantial connections to the Florida community and economy over many years, of which he is rightfully proud. As a medical student, he was accepted to highly competitive clerkships at the Cleveland Clinic in Weston, Florida after he scored above the average neurosurgeon on the national medical boards. In 2010, he completed his Orthopedic Surgery and Emergency Medicine clerkships with honors at Cleveland Clinic Florida. His parents moved to Florida while he was in medical school and Florida has been his home base for many years. After medical school, in 2013 Dr. Isaacs founded his first Florida business. As the Complaint states, his work with Florida companies resulted in "**an invention created by a Florida resident and specified in the '847 patent resulted in approximately $100 million in savings to the national economy. It was years ahead of its time in seeking to reduce unwanted subscriptions, which now plague nearly every industry.**" In 2020, Dr. Isaacs was eligible and subsequently granted domiciled Homestead Law status pursuant to Fla §196.031; Const. Art. X, §4.

8. Apple and Gibson Dunn tell an entirely different story in their motion; their story is not based on fact, is false, misleading, and sanctionable under Rule 11. Plaintiff (and Dr. Isaacs) reserve the right to seek sanctions at a later date. The Court should take judicial notice of the sanctions motion in *Coronavirus Reporter* already docketed in this case, as it concerns much of the same improper fraud on the court carried out by Gibson Dunn (Docket 26-1). Gibson Dunn asserts in their motion a whole host of facts they know to be untrue. Indeed, Gibson Dunn and Dr. Isaacs have been involved in almost four years of RICO litigation involving two Supreme Court *cert* petitions. Amongst the false statements in the improperly filed Motion to Transfer, Gibson Dunn argues "**this case has no link to this district**," "**Public records refute [that Coring is a Florida C Corporation]**" and

"**Public records refute [Dr. Isaacs is] a Florida inventor**," and that **Dr. Isaacs is a "Fort Washington, PA resident**." In is incontrovertible that Dr. Isaacs went to medical school in Florida, his close family has lived here for almost twenty years, he has been CEO of a Florida business for almost ten years, and a Homestead resident since 2020. But Gibson Dunn's most nasty, heinous victim blaming attacks Dr. Isaacs for having suffered a head injury in 1997 – "**suffers from a neuropsychiatric illness**" – which **should have nothing to do with this class-action antitrust lawsuit about Mr. Cook's monopoly built in China**.

9. Finally, Gibson Dunn mischaracterizes (see Sanctions motion) Dr. Isaacs' decade long legal struggle to practice neurosurgery. In truth, Dr. Isaacs was uprooted from his medical residency, just after he completed the Cleveland Clinic clerkships, and unwillingly forced to defend himself in *three* different venues as to the same issue: long-acquitted charges dating back to 2005- before he even enrolled at the medical school where he earned his MD diploma. All *three* competent authorities ruled that Dr. Isaacs had been acquitted of the 2005 charges. One of those authorities, however, had a different ruling that determined Gibson Dunn's client – a California university – had failed to honor their acquittal agreement. This resulted in a RICO charge against that university, after ten years of unpleasant administrative proceedings forced upon Dr. Isaacs. The RICO charges ultimately were alleged against Gibson Dunn, for their role in a political retaliation enterprise against Dr. Isaacs. Gibson Dunn got off the RICO charge on a statute of limitations defense - hardly a grand slam victory. In 2017, the White House terminated World Bank President Jim Yong Kim after Dr. Isaacs' decade-long administrative proceedings yielded a collateral issue involving email spoliation that Dr. Isaacs reported to

6

FBI (that case is conveniently omitted from Gibson Dunn's list). In short, under SB 7072 Dr. Isaacs should be protected by this Florida Court[1], not subjected to more attacks by Gibson Dunn. SB 7072 prohibits politically-motivated censorship by App Platforms, which is exactly what Apple and Gibson Dunn are now doing by outrageously shaming Dr Isaacs' "neuropsychiatric" head injury to deflect from their retaliatory political motives.

10. In sum, **Apple seeks to fraudulently move this case on the grounds that Coring doesn't exist, and Dr. Isaacs doesn't live here in Florida**. They also seek to falsely characterize this as "serial litigation,"(see Sanctions motion) when in fact, Dr. Isaacs is a serial entrepreneur who has contributed significantly to the Florida and national economy by working collaboratively (as opposed to "proxy") with diverse startups by accomplished scientists. Exhibit A shows the Coring incorporation papers were filed with an effective date prior to the commencement of this lawsuit. Dr. Isaacs' Homestead status is a matter of public record. Gibson Dunn, who has researched Dr. Isaacs for nearly four years, certainly knew of Dr. Isaacs' Homestead certification and intentionally chose to withhold that from the Court and suggest that Dr. Isaacs was a Pennsylvania resident. **Gibson Dunn should be sanctioned for such fraud on the Court.**

11. Because their motion was filed under fraudulent pretenses, Plaintiff does not herein address, unless ordered so by the Court, the remaining twenty-some pages of Apple's

---

[1] Dr. Isaacs anticipates asserting claims against Apple as a plaintiff in this lawsuit, once amendment to the FAC is appropriate. Specifically, Dr. Isaacs may bring Florida Antitrust Law claims for damages Apple caused by censoring various apps (including his Florida business entities' ownership portion of apps like *Coronavirus Reporter* and Caller-ID) on the App Store. The Florida Legislature specifically intended that private civil lawsuits shall be permitted under Florida Antitrust Law, and this Court may not cancel out Plaintiffs' (or future Plaintiffs') rights to bring such action. Should Apple's motion be granted, *Coring* and Dr. Isaacs would be forced to file Florida Antitrust Law and SB 7072 claims in the California court which would likely conflict with substantive California law. Judicial economy favors denying Apple's motion in entirety especially as it was brought in bad faith, falsely refuting Dr. Isaacs' and Coring's connection to Florida.

7

arguments, all of which largely flow from fraudulent statements about lack of Florida connection and "proxy" of Dr. Roberts.

12. It is noticed that Dr. Isaacs asked the Northern California District Court to amend patent infringement claims into the *Coronavirus Reporter* case. The Court denied leave to amend, despite the fact Dr. Isaacs had yet to amend any of his claims in that case. That matter is pending appeal to Ninth Circuit and it is believed Dr. Isaacs is likely to be allowed to amend his patent claims into that case, which, critically, relate RICO and Sherman abuses to Apple's treatment of his IP patent rights. In short, Dr. Isaacs' patent claims are intertwined with Sherman and RICO claims and should be heard in the same case, if permitted by the Ninth Circuit. In light of that pending appeal, *Coring* will be removing the patent infringement claims from this lawsuit until further notice. Once this motion is adjudicated and Apple files a responsive pleading, Plaintiff will amend and remove the patent infringement claims (without waiver of right to re-raise them once Ninth Circuit decides on the matter). Hence, this Court need not rule on 28 U.S.C. § 1400 patent venue matter, as the issue is moot at least until the *Coronavirus Reporter* appeal is concluded.

13. It is noted that Apple filed a *writ of mandamus* in the Texas District Court and invoked *ad hominem* attacks on a Texas District Judge who did not move a patent case to Northern California. Apple should indicate in their reply to this motion whether or not they believe this case would result in a similar inappropriate response, or whether they accept that Plaintiff has voluntarily held the patent claims in abeyance, hopefully to be heard in the Northern California district.

14. As to Apple's § 1404 request, the private interest and public interest arguments both fail. As stated above, Plaintiff filed a valid Florida Antitrust Act claim; to move the Sherman

claims to Northern California would not be in the public interest as that court would then need to apply Florida law for SB 7072 and Florida Antitrust. Upon information and belief, most class members are *not* California residents, hence the convenience to the parties is unlikely to differ between California and Florida. I Furthermore, all Apple employees currently work remotely in various parts of the country (with a large boycott of employees refusing to return to physical campus work with Mr. Cook), so there is even less likelihood that a "majority" of witnesses reside in Northern California. Plaintiff is a FL corporation, and Dr. Isaacs has strong ties to Florida, and both are seeking protection under Florida Law for good reason.

15. The most serious flaw with Apple's argument to change venue is that they assert the DPLA should be the "law of the land" and that all Plaintiffs who ever sue Apple should be bound to the DPLA's forum selection clause, even if they never signed the DPLA. In other words, Apple is asking this Court to make a Florida company, who has no privity whatsoever with Apple, move venue to California. That is simply unfair.

16. Indeed, the Department of Justice recently issued guidance on the DPLA, in the form of an amicus brief in the *Epic* Ninth Circuit Appeal. That *amicus* brief was already filed on this docket (See Dkt 29-1). The DOJ unambiguously said that Plaintiffs should be permitted to challenge the DPLA elements as a contract of adhesion:

> "The [Epic Court] held that Apple's [DPLA] written agreement with developers— is not a "contract" subject to Section 1 because developers must accept its terms. This carve-out—at odds with text and precedent—would insulate numerous potentially harmful agreements from Section 1 scrutiny." (DOJ Amicus, P. 14)

17. Hence under most recent DOJ guidance, to "carve-out" and "insulate" Apple from DPLA scrutiny would be "harmful" to the enforcement of Sherman Act. That is precisely what

9

Apple requests – by claiming the DPLA forum selection clause – which Plaintiff never even signed – is the law of the land. This is a circular, most absurd argument to say the least. *Coring* never signed the DPLA, hence there is no grounds for a forum move to Northern California. Even if *Coring* had signed the DPLA, under DOJ guidance, this should be open to challenge in the courts as an anticompetitive, contract of adhesion. In effect, any Florida company that wishes to transact on the internet (through Apple's 65%-85% monopoly of US smartphone commerce) would be bound by California law under Apple and Gibson Dunn's argument. That is not just, and the Eleventh Circuit would seemingly review such an order under mandamus. Apple's motion essentially asks the Court to refuse any challenge to the DPLA's authority in Florida. That is improper.

18. **For all of the aforementioned reasons, Defendant Apple Inc's Motion to Transfer Venue should be denied in its entirety. Plaintiffs respectfully request oral argument on this motion.**

Respectfully submitted, this 7th day of February 2022.

/s/ Keith Mathews
Keith Mathews
Attorney for The Coring Company
*Pro Hac Vice*
NH Bar No. 20997
Associated Attorneys of New England
PO Box 278
Manchester, NH 03105
Ph. 603-622-8100
keith@aaone.law

/s/ Ayelet Faerman
FL Bar No. 102605
FAERMAN LAW, PA
3859 NW 124th Ave
Coral Springs, FL 33065
ayelet@faerman.law

## CERTIFICATE OF SERVICE

I, Keith Mathews, do declare as follows:

I certify that a copy of the foregoing OBJECTION TO VENUE TRANSFER was served upon all parties, in accordance with applicable service of process guidelines.

Executed on this 7th day of February 2022.


                                            /s/ Keith Mathews
                                            Keith Mathews