UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 21-82235-CIV-CANNON

THE CORING COMPANY, on behalf of itself
and all others similarly situated

                Plaintiffs,

v.

APPLE INC.

                Defendant.

**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS**
**MOTION TO TRANSFER VENUE**

**INTRODUCTION**

Apple Inc.'s motion established three independent bases for transfer to the Northern District of California: The first-filed rule, the patent venue statute (28 U.S.C. § 1406(a)), and the convenience of the parties and witnesses (28 U.S.C. § 1404(a)). Although this Court ordered Plaintiff Coring Company to respond to Apple's motion, Dkt. 30, its response concededly "does not . . . address" the grounds for transfer set forth by Apple. Resp. ¶ 11. Indeed, Coring says *nothing at all* about the first-filed rule, nor does it dispute that its patent claim must be venued in California. Apple's motion should be granted as unopposed for either or both of those reasons.

With respect to the convenience factors, Coring does not dispute that this follow-on lawsuit presents significant issues of res judicata that are best resolved by the court that oversaw prior litigation initiated by related entities. Coring also confirms that Jeffrey Isaacs is driving this case, just as he helmed the *Coronavirus Reporter* litigation in California, does not contest that its

1

antitrust claims are virtual carbon copies of the claims already rejected in California, and agrees the patent claim here is "intertwined" with and "should be heard" with parallel litigation in the Northern District of California. Resp. ¶¶ 6–9, 12 & n.1. All this is in keeping with the plaintiffs' representation to the California court "that Coring is amenable to consolidating its claims" there. Brass Decl., Ex. A, at 3. This is an archetypal case for transfer.

Moreover, while Coring's response is long on invective, it does not establish any nexus between this case and this District. Coring offers no competent evidence to contravene Apple's showing that at the time this case was filed neither Coring nor Isaacs was a "resident" of Florida. As the Complaint admits, this venue was chosen not for any legitimate reason but as an effort to escape "Ninth Circuit law" it perceives as unfavorable. Compl. ¶ 97. This case should be transferred to California.

## I. ARGUMENT

### A. Transfer Is Warranted Under Three Separate Standards

Apple seeks transfer under the first-filed rule, 28 U.S.C. § 1406(a), and 28 U.S.C. § 1404(a). For any or all of those reasons, the action should be transferred to the California court that has already presided over substantial litigation brought by related entities in *Coronavirus Reporter*, which was resolved on a motion to dismiss yet generated more than 100 docket entries (initiated by the plaintiffs) en route to final judgment. Coring's response offers no cognizable basis for resisting transfer.

#### 1. Coring Does Not Dispute That The First-Filed Rule Applies

Coring's failure to mention, let alone contest, transfer under the first-filed rule is decisive. *See Atlas One Fin. Grp., LLC v. Alarcon*, 2015 WL 1191211, at *6 n.2 (S.D. Fla. Mar. 16, 2015) ("If a party does not present oppositional arguments to the court, it forfeits those arguments.").

Moreover, Coring's response underscores why each of the three relevant factors are met here:

- ➢ As to the chronology of cases, Coring admits that *Coronavirus Reporter* predates, and is far more advanced than, this case. *See, e.g.*, Resp. ¶ 12; *see also* Mot. at 15–16. That extends not only to Coring's cloned antitrust theories but also to its patent claim, which Coring acknowledges ought to be part of that litigation. Resp. ¶ 12.

- ➢ As to similarity among the parties, Coring's response eliminates any doubt that Isaacs is the real-party-in-interest who is driving this litigation. *See* Resp. ¶¶ 6, 9 & n.1, 12 (acknowledging that Coring's patent claim is in fact "Isaacs' patent claim"). And although Coring *still* has not filed the required corporate disclosure, it promises to unmask itself soon by inserting Isaacs himself as a plaintiff. *See id.* ¶ 9 n.1.

- ➢ As to the similarity of issues, Coring admits that this case and *Coronavirus Reporter* are "intertwined." Resp. ¶ 12; *see also id.* ¶¶ 8, 9 n.1. Indeed, Coring has previously contended that proceedings in *Coronavirus Reporter* are so "highly relevant" that it cannot prosecute this case without first seeing how that case is resolved. Dkt. 26 at 3.

There is therefore no dispute that this case should be transferred under the first-filed rule to permit Judge Chen to consider claims that all agree are intertwined with arguments he already has resolved. *See Lianne Yao v. Ulta Beauty Inc.*, 2018 WL 4208324, at *3 (S.D. Fla. Aug. 8, 2018).

    **2.    Coring Concedes That Transfer Is Warranted Under § 1406(a)**

There also is no dispute that this case should be transferred under 28 U.S.C. § 1406(a). The critical issue is where the alleged "acts of infringement" occurred. 28 U.S.C. § 1400; *see also* Mot. at 18–20. Coring does not even address this question, much less contend such infringement occurred in Florida. *See* Mot. at 18–20. Instead, it concedes that the patent claim it filed here "should be heard" in the Northern District of California after all. Resp. ¶ 12. And Coring's

affiliates likewise have told the California court "that Coring is amenable to consolidating its claims" there. Brass Decl., Ex. A, at 3.

Despite its apparent agreement that California is the proper venue, Coring tries to forestall transfer by representing that it "will be removing the patent infringement claims from this lawsuit." Resp. ¶ 12. Coring has not filed an amended complaint, however, and Coring has previously alluded to other amendments it did not make. *See* Compl. ¶¶ 16, 109 (suggesting that it "may" assert RICO claims). It is black-letter law that a complaint cannot be amended through statements in a brief, *Kleiman v. Wright*, 2020 WL 5632654, at *44 (S.D. Fla. Sept. 21, 2020), and thus Coring's patent infringement claim is and remains Count VII of the operative complaint. *See* Compl. ¶¶ 175–80. That claim concededly cannot proceed in this District, and Coring's decision to plead that claim independently requires transfer to California. *See* Mot. at 20.

### 3. Coring's Response Demonstrates That Transfer Is Warranted Under § 1404(a)

Apple identified nine public- and private-interest factors favoring transfer under § 1404(a). Mot. at 7–15. These include: (1) issues of res judicata should be resolved by the judge who handled the prior litigation; (2) this case lacks any nexus to Florida; (3) this Court's relative docket congestion; (4) the principal events all occurred in California; (5, 6, and 7) California is more convenient for the parties, counsel, and likely witnesses; (8) sources of proof relating to Coring's allegations will all be in California; and (9) Coring's choice of forum is entitled to no weight. *See id*. Coring addresses only two of these nine factors—the fifth and seventh—and rebuts none of them. Instead, the three arguments that it does make about connections to Florida, claims under Florida law, and the location of putative class members point up why transfer *is* appropriate.

#### a. Neither Coring Nor Isaacs Has Demonstrated A Nexus To Florida

This Court's local rules require a party to support factual assertions with "affidavits and

4

declarations." S.D. Fla. L.R. 7.1(c)(1).  Apple provided properly supported evidence establishing that, on the date the Complaint was filed, Coring was not a resident of Florida and Isaacs was a resident of Pennsylvania.  *See* Mot. at 12.  Coring attempts to take issue with those showings, but it offers no *evidence* in opposition.  Its arguments should be rejected for that reason alone, and they also fail on their own terms.

Coring's response focuses heavily on *Isaacs'* alleged connections to Florida, confirming that Isaacs drives this litigation as the real-party-in-interest—just as he is the main proponent of the claims in *Coronavirus Reporter*.  Mot. at 12; *see also Weinberger v. Tucker*, 391 F. Supp. 2d 241, 245 (D.D.C. 2005) (explaining that such linkage "strongly support[s] a transfer to the court that reviewed and decided the prior litigation").  Coring's assertions that Isaacs has roots in Florida are supported by no evidence.  *See* Resp. ¶¶ 7–8.  Indeed, some of Coring's assertions contradict prior representations in other cases.  *Compare id.* ¶ 7 (asserting that he completed medical school in Florida in 2010), *with* Brass Decl., Ex. B, at 1 (Isaacs' filing in *Coronavirus Reporter* purportedly showing that he completed medical school at the American University of the Caribbean in 2010).  And the various unsubstantiated claims about properties in this State are contrary to repeated filings with the Patent and Trademark Office and federal courts listing his address in Pennsylvania.  *See* Dkt. 1-4 at 1; Dkt. 25-9 at 1.  Coring offers no explanation for these records, nor the fact that Isaacs only began listing a Florida address on filings in *Coronavirus Reporter* two days after Apple filed its motion to transfer here.  *See* Brass Decl., Ex. C.  It may well be that Isaacs' parents or relatives own property in Florida, but there is no evidence in this record that establishes *he* is a Florida resident or owns property in this State.

More importantly, the actual named plaintiff was not a Florida resident on the date the Complaint was filed.  *See MindbaseHQ LLC v. Google LLC*, 2021 WL 1923142, at *5 (S.D. Fla.

5

May 13, 2021) (transferring case in part because entity's "ties" were only of a "more recent vintage"). Florida's official public records, available to any person on the Secretary of State's website and properly authenticated by Apple in connection with this reply, show that Coring did not file for incorporation until January 18, 2022, with an effective date of January 13. Brass Decl., Ex. D. This means that Coring did not exist until a month after this case was initiated and a day after Apple filed its motion—and that for that entire time Coring's attorneys litigated this case on behalf of a nonexistent corporation. This in turn raises the question of who authorized the initiation of this case and Coring's filings prior to that date—and also establishes that Coring's counsel appear to have made at least three false representations to the Court as to Coring's status. *See* Resp. ¶ 10 ("the Coring incorporation papers were filed with an effective date prior to the commencement of this lawsuit" on December 15); Compl. ¶ 14 (stating, on December 15, that Coring "is a Florida C Corporation"); Dkt. 26 at 2 n.2 ("Coring incorporation paperwork was filed in December 2021.").

To be sure, Coring appends to its response an unauthenticated document that appears to be a partial screenshot of some unidentified transaction with SunBiz. *See* Dkt. 31-1. In contrast to the official documentation submitted by Apple, the single page attached to Coring's response does not identify the name of the filer, nor does it include any dates. Indeed, the statement at the top of the page—"Coring incorporation receipt dated 12-15 with effective date 12-10, notice of bu [sic] Sunbiz filing system," *id.*—was obviously added by Coring or its counsel. This legend has no evidentiary value, and the document itself bears no filing date, no effective date, no indication of what it is or pertains to, and on its face states that "Payment hasn't been applied yet." *Id.* Apple and the Court have no way of identifying what this document is, when it is from, or how it is supposed to relate to this case. It does not contradict Florida's official records establishing that

6

the Coring Company was incorporated long after this lawsuit was filed. *See* Brass Decl., Ex. D.

Additional public records also belie any claim that Coring has a connection to Florida. Its articles of incorporation state that Coring's principal place of business and mailing address are not in Florida, but in Manchester, New Hampshire—at the law offices of Coring's (and Isaacs') counsel, Mr. Mathews. Brass Decl., Ex. E. The only Florida address contained in the articles is an address for Coring's "registered agent" (also Mr. Mathews) that appears to be a UPS Store. Brass Decl., Ex. F. At best, then, Coring is an entity unmoored from Florida, formed after this case began, for purely litigation purposes, whose connection to this District should be given no weight whatsoever. *See Rothschild Dig. Media Innovations, LLC v. Sony Comput. Entm't Am. LLC*, 2014 WL 12029271, at *2 (S.D. Fla. Aug. 28, 2014) (discounting ties of entity "created solely for purposes of licensing and litigation" with no offices in venue).

    **b.**  **Coring's State Law Claims Are No Barrier To Transfer**

Coring also opposes transfer because it asserts two claims under Florida law. Resp. ¶ 4. Coring claims Apple ignored this issue, arguing that its motion "contains *zero* references to the two Florida statutes and zero explanation why they should be adjudicated by a California court." *Id.* That is false. Apple's motion recognized those claims and explained that they are no barrier to transfer under applicable law because they "are derivative of the federal antitrust claims" and thus "the issues to be addressed by the [transferee] court" would be "essentially identical" save for the "difference [between] the application of California versus Florida substantive law." Mot. at 18 (quoting *Banegas v. Procter & Gamble Co.*, 2016 WL 5940104, at *1 (S.D. Fla. Sept. 28, 2016)). And here, even that distinction is illusory: The Florida statutes Coring invokes are interpreted by reference to federal antitrust law, *St. Petersburg Yacht Charters, Inc. v. Morgan Yacht, Inc.*, 457 So. 2d 1028, 1032 (Fla. Dist. Ct. App. 1984), with which the Northern District of California is intimately familiar—both in general and with regard to the specific theories advanced

here. It is Coring, not Apple, who has failed to join issue.

In any event, Coring's argument is immaterial. Federal courts—including the Northern District of California—routinely apply out-of-state law. *See Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 862 (N.D. Cal. 2018) ("[F]ederal courts are frequently called upon to interpret the laws of the several States."). That includes the very Florida statutes Coring emphasizes. *See, e.g.*, *In re Juul Labs, Inc., Antitrust Litig.*, 2021 WL 3675208, at *4 (N.D. Cal. Aug. 19, 2021); *In re Capacitors Antitrust Litig.*, 2020 WL 6462393, at *1 (N.D. Cal. Nov. 3, 2020); *Tech Data Corp. v. AU Optronics Corp.*, 2012 WL 3236065, at *1 (N.D. Cal. Aug. 6, 2012); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1100133, at *1 (N.D. Cal. Mar. 24, 2011); *In re Webkinz Antitrust Litig.*, 2009 WL 3634162, at *1 n.1 (N.D. Cal. Oct. 30, 2009). Coring offers no reason why Judge Chen could not do so ably here.

### c. The Location Of Putative Class Members Favors Transfer

Last, Coring disputes the weight given to its selection of this forum because "most class members are *not* California residents." Resp. ¶ 14. But of course, they are not Florida residents either. And no class will ever be certified if Coring's claims are dismissed, as they should be. Coring offers no rejoinder to the cases holding that the choice made by a named plaintiff in a putative multistate class action deserves no special weight. *See Clinton v. Sec. Benefit Life Ins. Co.*, 2020 WL 6120565, at *9 (S.D. Fla. June 29, 2020).

### d. The Other Uncontested Factors Heavily Favor Transfer

Critically, Coring's narrow arguments fail to address the most important considerations. Chief among these is res judicata, which "weighs heavily in favor of transferring" where, as here, a case presents "issues concerning possible claim preclusion." *Marcel Fashions Grp. v. Lucky Brand Dungarees, Inc.*, 2011 WL 13217487, at *7 (S.D. Fla. July 19, 2011). Judge Chen has already dealt with these issues (and parties), and should do so again.

Coring also ignores the locus of evidence and the convenience of witnesses. It suggests without evidence that "all Apple employees currently work remotely in various parts of the country," Resp. ¶ 14, ignoring Mark Rollins' sworn declaration that the relevant Apple employees "primarily live and work within the Northern District of California." Dkt. 25-26 ¶ 12; *see also id.* ¶¶ 11, 13, 14. The undisputed *evidence* establishes that these factors, too, support transfer. *See Beckman Coulter, Inc. v. Sysmex Am., Inc.*, 2018 WL 4901407, at *3 (S.D. Fla. Sept. 26, 2018) (stating that "the convenience of witnesses is the single most important factor in transfer analysis" (quotation marks omitted)).

B.      **Coring's Frolics And Detours Should Be Disregarded**

Coring's response raises five points that have nothing to do with the issues raised by Apple's motion to transfer. As such, Apple addresses each only briefly.

*First*, Coring argues that this case should not be transferred pursuant to the forum selection clause in the Apple Developer Program License Agreement ("DPLA") because that contract is somehow invalid. *See* Resp. ¶¶ 1, 15–17. But because Coring alleged that it had not signed the DPLA, Compl. ¶ 171, *Apple did not seek transfer under the DPLA*. Indeed, Apple's motion references the DPLA just once in a footnote for the proposition that Coring's alleged failure to sign the DPLA will doom its case for lack of standing. *See* Mot. at 12 n.2. Apple will address that argument, as well as the many flaws in Coring's challenges to the DPLA, at the appropriate time.

*Second*, Coring's response refers to a supposed "illicit agreement with the Chinese government," suggesting that the agreement forms "the crux of the Complaint." Resp. ¶¶ 2, 5. Not so. The sparse allegations about this supposed agreement appear in only *three* of 184 paragraphs in the Complaint. *See* Compl. ¶¶ 9, 16, 112. And they do so only with reference to Mr. Cook, who Coring voluntarily dismissed from this case on December 20, 2021, *see* Dkt. 12,

or to a RICO claim that was never pleaded, Compl. ¶ 16. This random allegation has no connection to the claims actually included in the Complaint, and nothing to do with transfer in any event.

*Third*, Coring invokes Florida's Senate Bill 7072 no fewer than seven times as a basis to deny transfer. *See, e.g.*, Resp. ¶ 1. The connection between that legislation and this motion is at best unclear, for that statute applies to "social-media providers" like "YouTube, Facebook, [and] Twitter," says nothing about venue or transfer in federal court, and Coring has not even alleged a claim under it. *NetChoice, LLC v. Moody*, 2021 WL 2690876, at *2 (N.D. Fla. June 30, 2021); *see also* Fl. Stat. §§ 106.072, 287.137, & 501.2041. And in any event, that law has in large part been enjoined for violating the First Amendment—including the provisions targeted specifically to "politically-motivated censorship" of the type to which Coring alludes. Resp. ¶ 9; *see also NetChoice*, 2021 WL 2690876, at *1, *10–11.

*Fourth*, Coring argues that Apple did not meet and confer before moving to transfer. *See* Resp. ¶ 6. Unfortunately, this argument continues Coring's pattern of ignoring *evidence* in favor of invective and insinuation. Apple submitted with its motion a declaration authenticating an email exchange in which Apple's counsel conferred in writing with Coring's counsel, who declined to agree to "moving the case to California." Dkt. 25-25. That is precisely what this Court's rules require. *See* S.D. Fla. 7.1(a)(3) (requiring "counsel for the movant [to] confer (orally or in writing)" in a good-faith effort "to resolve by agreement the issues"). Moreover, Coring cannot claim surprise given that Apple sought leave, and this Court ordered it, to file a motion to transfer. *See* Dkt. 22.

*Fifth*, Coring asserts that Apple and its counsel have engaged in ad hominem attacks. Resp. ¶¶ 1, 4, 5. Apple is confident that the Court will review all the submissions and come to its own conclusions on this subject. It bears note that in the unnecessarily long and contentious history of

10

this and related litigation, however, none of the many motions for sanctions and suggestions of impropriety made by Isaacs and his counsel have been granted, and it is they who have been reprimanded for inappropriate ad hominem attacks. *See Primary Prods. LLC v. Apple Inc.*, No. 2:21-cv-00137-JDL, Dkt. 19 (D. Me. July 20, 2021).

## II. CONCLUSION

For these reasons, as well as those stated in Apple's Motion to Transfer Venue, this case should be transferred to the Northern District of California.

Dated: February 15, 2022

Respectfully submitted,

By: _____/s/ Rachel S. Brass_____

GIBSON, DUNN & CRUTCHER LLP
MARK A. PERRY (pro hac vice)
  mperry@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:    (202) 955-8500
Facsimile:     (202) 467-0539

RACHEL S. BRASS (pro hac vice)
  rbrass@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:    (415) 393-8200
Facsimile:     (415) 374-8429

McDERMOTT WILL & EMERY LLP
CAROLINE M. IOVINO (Florida Bar No. 181110)
  ciovino@mwe.com
333 S.E. 2nd Avenue, Suite 4500
Miami, FL 33131-2184
Telephone:    (305) 358-3500
Facsimile:     (305) 675-8146

*Attorneys for Defendant Apple Inc.*

## **CERTIFICATE OF SERVICE**

I, Caroline Iovino, hereby certify that on this 15th day of February, 2022, I caused the foregoing document to be served on all parties via the Court's CMF/ECF system.